**UNITED STATES of America,
Petitioner,**

v.

**Ira BLUMBERG, Respondent.**

No. M–18–304.

United States District Court,
S.D. New York.

March 26, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Christine H. Chung, Asst. U.S. Atty., of counsel), New York City, for petitioner U.S.

Dominic F. Amorosa, New York City, for respondent Ira Blumberg.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This Part I matter arises out of the government's attempt to enforce an Internal Revenue Service ("IRS") summons over the Fifth Amendment objections of respondent Ira Blumberg.

For the reasons set forth below, the summons will be enforced.

## BACKGROUND

On May 14, 1987 the IRS served Blumberg with a Collection Summons requiring him to appear at the White Plains office of the IRS on May 26, 1987. Blumberg failed to appear as directed by the summons.

After receiving an extension of the time to appear, Blumberg did appear before the IRS on August 20, 1987. When Blumberg appeared, he replied to all questions by stating that he was invoking his Fifth Amendment privilege against self-incrimination and that he intended to invoke that privilege as to each question he was asked other than his identity. Affidavit of Michael Ferrato Dated September 20, 1990 ("Ferrato Aff.") ¶¶ 5–6.

On October 15, 1990 the government moved by Order to Show Cause to compel compliance with the IRS summons. The government argued that Blumberg's testimony and documents "may be relevant to and can reasonably be expected to cast light on the subject of petitioner's investigation." The IRS investigation was for the purpose of locating assets to collect the income tax liability of Blumberg for the tax year ending December 31, 1984. The government alleged that Blumberg was in possession of books, records and other papers or had knowledge relating to this investigation. Petition to Enforce Internal Revenue Service Summons ¶¶ 3–4, 7.

On November 14, 1990 Blumberg's attorney, Dominic F. Amorosa, Esq., submitted an affirmation in opposition to the government's Order to Show Cause. Defense counsel reported that Blumberg had previously been employed at Longfellow Industries, Inc. which went into bankruptcy in 1985. Longfellow, and subsequently the bankruptcy trustee, contended that Blumberg stole hundreds of thousands of dollars while employed there in 1984 and 1985 and had concealed the proceeds of these thefts. Defense counsel argued that the government was now seeking Blumberg's testimony and documents relating to his income at the very same time that these alleged

thefts were alleged to have occurred. Defense counsel reported that Blumberg had asserted the Fifth Amendment privilege because he had a real fear that his testimony and documents could be used against him a criminal proceeding. Defense counsel argued that these fears were still legitimate and contended that if the trustee was correct, and Blumberg did steal funds, Blumberg's answers to the IRS's questions would expose his crimes. Defense counsel argued that Blumberg should not be compelled to answer IRS questions without immunity. Defense counsel contended that otherwise Blumberg had no assurance that his IRS testimony would not be used against him in a future criminal proceeding. Defense counsel also contended that Blumberg had no assurance about documents being used against him either, although he would not confirm or deny the existence of documents. Arguing that Blumberg had a valid Fifth Amendment concern in this matter, defense counsel asked that he not be ordered to testify about these financial matters. Affirmation of Dominic F. Amorosa, Esq. Dated November 15, 1990 ¶¶ 2–5.

On November 29, 1991 Blumberg and the government agreed by stipulation that Blumberg would appear and testify before an IRS Revenue Officer.

On December 23, 1991 Blumberg, accompanied by Amorosa, appeared and was deposed by Revenue Officer Michael Ferrato. At the deposition Blumberg asserted the Fifth Amendment privilege in refusing to answer questions regarding his home, job, banking arrangements, debts, assets and documents concerning assets. Transcript of Deposition of Ira Blumberg on December 23, 1991 ("Blumberg Dep.") at 6–8, 11–16.

The government now presses the petition to enforce the summons and asks that Blumberg be ordered to answer all questions previously put to him by Revenue Officer Michael Ferrato at the interview on December 23, 1991. The government argues that Blumberg has never contested that the IRS has made the preliminary showing required for enforcement of the summons. *See United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). The government argues that Blumberg is not entitled to assert the privilege because he has not come forward with facts that show a personal fear of prosecution. Instead, the government contends, Blumberg has only come forward with an attorney affirmation based upon information and belief which should be disregarded by the Court. The government argues that even assuming Amorosa's statements are true, Blumberg has no legitimate fear of prosecution because of the state and federal statutes of limitations have run for any crimes of embezzlement committed in 1984 or 1985. In addition, the government contends that Blumberg has not shown how the questions asked in December 1991 about his current assets could lead to prosecution for his alleged thefts in 1984 or 1985. The government argues that Blumberg's assertion of the Fifth Amendment privilege is improper and asks the Court to enforce the summons.

On February 4, 1992 the government and defense counsel appeared before the Court, as the Part I Judge, and argued the merits of enforcing the summons. The Court directed both sides to make additional submissions to complete the record in this case.

By letter dated February 6, 1992 defense counsel argues that Blumberg still could be prosecuted for the alleged thefts in 1984 and 1985, particularly if the charges relate to his income taxes. Defense counsel contends that transfers of the money into subsequent years could extend the statute of limitations and that charges such as mail and wire fraud are still possible. Defense counsel argues that even answers to questions about his current financial holdings could lead to charges against Blumberg, if the holdings are shown to be the fruits of the alleged crimes. In addition, defense counsel contends, the IRS questioned Blumberg about events from January 1, 1984 to the present. Defense counsel contends that if the IRS is only interested in Blumberg's current assets, they would not be asking about past events. Once again

defense counsel argues that Blumberg should be given immunity if the IRS wishes to question him about events over the last seven years. Letter of Dominic F. Amorosa, Esq. Dated February 6, 1992 ("Amorosa Letter").

The government responds that Blumberg has not shown a valid basis for asserting the Fifth Amendment privilege. The government contends that the statutes of limitations have run for each of the crimes defense counsel mentions in his letter. The government argues that defense counsel has shown no basis for any tolling of the statutes of limitations. In addition, the government contends defense counsel's arguments about the connection between current assets and past wrongdoing is at best speculation. It is the government's position that Blumberg's arguments are no more than a generalized fear of future prosecution which is insufficient to resist an IRS summons. *See Edwards v. Commissioner*, 680 F.2d 1268, 1270 (9th Cir. 1982). The government concludes by arguing that Blumberg has failed to demonstrate the compliance with the IRS summons will expose him to substantial risk of self-incrimination. Letter of Assistant United States Attorney Christine H. Chung Dated February 12, 1992.

## DISCUSSION

█ The Fifth Amendment provides that: "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const.Amend. V. The privilege against self incrimination extends to statements that are directly incriminating and those statements that could lead to incriminating evidence. *See Pillsbury v. Conboy*, 459 U.S. 248, 267, 103 S.Ct. 608, 619, 74 L.Ed.2d 430 (1983). As the Supreme Court has held,

> this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer ... The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimi-

nation. It is for the court to say whether his silence is justified ... and to require him to answer if 'it clearly appears to the court that he is mistaken'.... To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

*Hoffman v. U.S.*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118 (1951) (citations omitted).

"The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968) (citations omitted). "When the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege." *Estate of Fisher v. Commissioner*, 905 F.2d 645, 649 (2d Cir.1990) (citations omitted).

The government attacks Blumberg's assertion of the privilege because it is not justified by an affidavit from Blumberg and because Blumberg has no real fear of prosecution since applicable statute of limitations have run. A taxpayer asserting the privilege "must show a reasonable possibility that his own testimony will incriminate him, not establish it by a preponderance of the evidence." *Fisher*, 905 F.2d at 650. Instead of submitting his own affidavit, Blumberg relies on the affirmation submitted by his counsel. While I do not agree with the government that such a submission would never be adequate, the lack of an affidavit from Blumberg does make it more difficult to determine the validity of his assertion of the privilege.

█ Blumberg must show a legitimate fear of prosecution in order to persist in his claim of privilege. Courts have focused on the "reasonableness" of the taxpayer's fear. *See United States v. Edgerton*, 734

F.2d 913 (2d Cir.1984). Defense counsel argues that his client faces the risk of criminal prosecution because of thefts that allegedly took place at Longfellow in 1984 and 1985. The government contends that the applicable statutes of limitations on these crimes have run. "Such an absolute bar to subsequent prosecution may be dispositive in ascertaining the permissible scope of a claim of Fifth Amendment privilege." *Fisher,* 905 F.2d at 651. The applicable federal statute of limitations for embezzlement, wire fraud and mail fraud is five years under 18 U.S.C. § 3282. The applicable statute of limitations for tax evasion is six years under 26 U.S.C. § 6531. I must agree with the government that Blumberg faces no real risk of prosecution for embezzlement, mail fraud and wire fraud based on events in 1984 and 1985.

The question remains whether any of the statute of limitations periods could have been tolled. Defense counsel argues that:

> Transfers of this money following this period into subsequent years could extend the statute of limitations.... Even answers to questions about his current financial holdings could lead to proof against him, if such holdings are connected to the fruits of the alleged crime.

Amorosa Letter at 1. The government responds that these arguments are too speculative and do not raise a real fear of prosecution. A civil investigation of tax liability standing alone is simply not a sufficient basis for a fear of criminal tax prosecution. *See, e.g., Donaldson v. United States,* 400 U.S. 517, 534–36, 91 S.Ct. 534, 544–45, 27 L.Ed.2d 580 (1971). Defense counsel's vague assertions that the statutes of limitations could have been tolled, without citation to case law, does not persuade me that Blumberg has a real fear of prosecution.

Defense counsel contends that since the IRS asked questions about financial matters dating back to January 1, 1984, the IRS is not only concerned about locating present assets but is also investigating past wrongdoing. *See* Blumberg Dep. at 13. The IRS investigation specifically targets the collection of Blumberg's tax liability for the year ending December 31, 1984 so that questions extending back to January 1, 1984 seem logical. *See* Ferrato Aff.

¶ 7. The fact that the statutes of limitations have run on crimes committed in 1984 and 1985 makes it unreasonable for Blumberg to claim the privilege on events in 1984. Defense counsel's suggestion that the government give Blumberg immunity is a result that cannot be compelled by this Court. *See United States v. Salerno,* 937 F.2d 797, 807 (2d Cir.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 931, 117 L.Ed.2d 103 (1992).

I must conclude that Blumberg's assertion of the Fifth Amendment privilege at the December 23, 1991 deposition was not based on a reasonable fear of criminal prosecution. Therefore, I conclude that Blumberg must answer the questions that were put to him.

### ORDER

For the reasons set forth above, the motion to compel compliance is granted and Blumberg is ordered to answer the questions that he refused to answer at the December 23, 1991 deposition.